IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
~~JACKSON~~ Southern DIVISION



| | | |
|---|---|---|
| KEENA SIMS, INDIVIDUALLY, AND<br>AS ADMINISTRATRIX OF THE ESTATE<br>OF TOUSSAINT DIAMON SIMS AND ON<br>BEHALF OF K.S.S., A MINOR CHILD, AND<br>A.J.S., A MINOR CHILD, | | PLAINTIFFS |
| VS. | | CIVIL ACTION NO. 1:20cv247HSO-JCG |
| CITY OF MOSS POINT; LANCEN SHIPMAN,<br>BRANDON ASHLEY, AND JOHN DOES,<br>UNNAMED INDIVIDUALS, | | DEFENDANTS |

JURY TRIAL DEMANDED

### COMPLAINT

COMES NOW, Keena Sims, individually, and as Administratrix of the Estate of Toussaint Diamon Sims, and on behalf of K.S.S., a Minor Child, and on behalf of A.J.S., a Minor Child, (collectively, "Plaintiffs"), by and through their attorneys, Brian T. Dunn, Esquire, and Gerald Talmadge Braddock, Esquire, and The Cochran Firm, and file their Complaint against Defendants, The City of Moss Point, Lancen Shipman, an individual, Brandon Ashley, an official, and respectfully bring their causes of action before this Court.

This civil action is brought under 42 U.S.C. § 1983, which hereby invokes the jurisdiction of this Federal Court through a survival action brought herein under the Fourth Amendment to the United States Constitution by Keena Sims, as the duly appointed Administratrix of the Estate of Toussaint Diamon Sims (hereinafter sometimes referred to as "Decedent Sims" or "Mr. Sims") who, by the authority of § 91-7-233 of the Mississippi

Annotated Code, is entitled to bring certain causes of action asserted herein, and additionally, asserts claims set forth herein on behalf of the wrongful death heirs of Decedent Toussaint Diamon Sims, Minor Plaintiffs A.J.S. and K.S.S.

## PARTIES

1. Plaintiff Keena Sims, the birth mother of Decedent Sims, brings this action in her individual capacity, as well as in her capacity as the Administratrix of The Estate of Toussaint Sims. At the time of his death, Mr. Sims was a 27-year-old resident of Jackson County, Mississippi and was the birth father of Minor Plaintiffs A.J.S. and K.S.S.

2. Plaintiff A.J.S. (hereinafter sometimes referred to as "Plaintiff") is a surviving minor child and heir of Decedent Sims. At all times relevant to the acts and omissions herein alleged, Plaintiff A.J.S. was a resident of Jackson County, Mississippi.

3. Plaintiff K.S.S. (hereinafter sometimes referred to as "Plaintiff") is a surviving minor child and heir of Decedent Sims. At all times relevant to the acts and omissions herein alleged, Plaintiff A.J.S. was a resident of Jackson County, Mississippi.

4. At all times relevant to the acts and omissions herein alleged, Moss Point Police Department Officer Defendant Lancen Shipman, (hereinafter sometimes referred to as "Defendant Shipman" and "Defendant Officer") was a resident of Jackson County, Mississippi. Further, at all times relevant to the acts and omissions herein alleged, Defendant Shipman was a peace officer employed by the City of Moss Point (hereinafter sometimes referred to as Defendant City") and the Moss Point Police Department, and was acting under color of law and in the course and scope of his employment with Defendant City and the

Case 1:20-cv-00247-HSO-JCG   Document 1   Filed 07/30/20   Page 3 of 14

Moss Point Police Department (hereinafter sometimes referred to as "MPPD"). Plaintiffs bring this action against Defendant Shipman in his individual capacity.

5. At all times relevant to the acts and omissions herein alleged, Moss Point Police Chief Defendant Bradley Ashley (hereinafter "Chief Ashley") was a resident of Jackson County, Mississippi. Further, at all times relevant to the acts and omissions herein alleged, Chief Ashley was employed by the City of Moss Point and the Moss Point Police Department in the capacity of the Chief of Police, and was acting under color of law and in the course and scope of his employment with Defendant City and the MPPD. The MPPD is a department of the City of Moss Point Government which was responsible for, and through its agents, servants and/or employees undertook, police functions in the City of Moss Point. At all times relevant to this action, Chief Ashley exercised policy-making authority for the MPPD, established the policies and procedures for screening, hiring, appointing, training, monitoring, and supervising police officers at the MPPD, and enforced the duties, conduct, and discipline of police officers and other employees at the MPPD. Plaintiffs bring this action against Defendant Shipman in his official capacity.

6. At all times relevant to the acts and omissions herein alleged, Defendant City of Moss Point was a municipal corporation and governmental entity within the meaning of the federal and Mississippi State Constitutions. Defendant City, through its departments, agents, servants and or employees, conducted certain police functions within the geographical borders of the State of Mississippi. Defendant City was responsible for hiring police officers, including, but not limited to, Defendant Officer Shipman.

7. Plaintiffs are unaware of the true names and capacities of those Defendants named herein as "JOHN DOE" Defendants. Plaintiffs will amend this Complaint to allege said

3

Defendants' true names and capacities when that information becomes known to them. Upon information and belief, these DOE Defendants are legally responsible and liable for the incident, injuries, and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful, or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional, willful, or wanton misconduct in creating and otherwise causing the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiffs will seek leave to amend this Complaint to set forth said true names and identities of the unknown named DOE Defendants when they are ascertained.

8.  Plaintiffs are informed, believe, and thereon allege that at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment, and/or conspiracy and with the permission and consent of other co-Defendants.

## JURISDICTION AND VENUE

9.  This court has jurisdiction over the claims in this complaint under 28 U.S.C. §§1331 and 1343.

10. The venue in this court is proper under 28 U.S.C. § 1391(b).

11. Plaintiffs have provided timely notice to the appropriate Defendants of all claims referenced herein.

## FACTUAL ALLEGATIONS RELATING TO ALL CLAIMS

12.     This Complaint concerns a fatal officer-involved shooting incident which occurred during the early evening hours of Thursday, August 8, 2019, at or around the intersection of Martin Luther King Jr. Boulevard and 2nd Street in the City of Moss Point, County of Jackson, and State of Mississippi. At approximately 6:00 p.m. on that date, Mr. Sims was sitting in the passenger seat of a vehicle that was parked at 3G's Convenience Store on the corner of Jefferson and Telephone Road when Defendant Shipman, while acting under color of law and in the course and scope of his employment with Defendant City and the Moss Point Police Department, confronted Mr. Sims without warning, and visibly armed. When he was initially confronted by Defendant Shipman, Mr. Sims was not engaged in any form of criminal activity, and Defendant Shipman observed no crimes in progress prior to confronting Mr. Sims.

13.     As Defendant Shipman approached Mr. Sims' vehicle with his weapon drawn, Mr. Sims drove away, and a vehicle pursuit ensued, lasting approximately four and a half minutes. Following the termination of the vehicle pursuit, Decedent Sims exited his vehicle and fled, running in a full sprit through the yard of a residence. Defendant Shipman quickly exited his vehicle to chase after Mr. Sims. After exiting his vehicle, within the time of approximately ten seconds or less, Defendant Shipman began firing multiple rounds from his department-issued firearm, which struck Mr. Sims, who, after surviving for an appreciable period of time, succumbed to his gunshot wounds on that day. When Defendant Shipman began firing at Mr. Sims, Mr. Sims was thirty to fifty feet away from Defendant Shipman, and was in the process of increasing his distance from Defendant Shipman when first shot was fired. Prior to the shooting. Mr. Sims was running in a full sprint, was running at a faster

rate of speed than Defendant Shipman, and was increasing his distance from Defendant Shipman. After exiting his vehicle, and prior to initiating the foot pursuit, Defendant Shipman made no effort to secure the assistance of any additional MPPD officers or other departmental resources, did not wait for any additional officers to assist him in the pursuit, did not communicate with any additional officers in the vicinity of the foot pursuit, nor did he utilize, nor attempt to utilize, any form of cover or concealment in the moments preceding the shooting. After exiting his vehicle and prior to fatally shooting Mr. Sims, Defendant Shipman made no effort to utilize additional departmental resources to establish any form of containment or surveillance of Mr. Sims, and failed to activate the audio features on his body worn camera at any time during the subject incident, in a manner not authorized by MPPD policies. Following the shooting, the involved officers on scene denied medical care to Mr. Sims in a manner that demonstrated deliberate indifference to his constitutional rights.

14.     Both prior to and during the shooting incident, Mr. Sims was running away from Defendant Shipman in a full sprint and was clearly and obviously attempting to flee from him, and any other MPPD officers present within the vicinity of the shooting incident. At no time during the course of these events did Mr. Sims pose any reasonable or credible threat of death or serious bodily injury to any person, nor did he do anything to justify the force used against him, and the same was deadly, excessive, unnecessary, and unlawful. Both prior to and during the time in which he was fatally shot, Decedent Sims was actively running away from Defendant Shipman, and posed no immediate threat of death or serious bodily injury to Defendant Shipman nor any other person, made no aggressive movements, no furtive gestures and no physical movements which would suggest to a reasonable officer that he had the will to inflict substantially bodily harm against Defendant Shipman or any other person.

Both prior to and during the shooting incident, Decedent Sims made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that he was in the process of inflicting, or attempting to inflict, substantially bodily harm against Defendant Shipman or any other person.

I. **PLAINTIFFS' FIRST CLAIM: 42 U.S.C. § 1983 - PEACE OFFICER LIABILITY AGAINST DEFENDANT SHIPMAN, BASED ON THE UNREASONABLE, UNJUSTIFIED, AND EXCESSIVE USE OF DEADLY FORCE**

15. Plaintiffs incorporate by reference all the foregoing allegations.

16. The Civil Rights Act, codified as 42 U.S.C. § 1983, provides, in pertinent part, as follows:

> *Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the the party injured in an action at law, suit in equity, or other proper proceeding for redress.*

17. By and through this Complaint, Plaintiffs allege that Defendants, jointly and severally, deprived Decedent Sims of the rights secured to him by the Fourth Amendment rights United States Constitution which include, but are not limited to, the right to be free from unreasonable governmental seizures of his person.

18. This cause of action is in part brought on behalf of Decedent Toussaint Diamon Sims, by and through his duly appointed Administratrix, who would, but for his death, be entitled to bring this cause of action in his own right, and is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of rights, privileges, and/or immunities secured to Decedent Sims by the Fourth

Amendment to the Constitution of the United States, which include, but are not limited to, the right to be free from unreasonable governmental seizures of his person.

19. At all times mentioned herein, Defendant City employed the individual Defendants named herein. Defendant City provided its individual employees and agents, including Defendant Shipman, with official badges and identification cards which designated and described the bearers as employees of the Defendant City and the Moss Point Police Department.

20. At all times relevant to the acts and omissions herein alleged, Defendant Shipman was employed by Defendant City and the Moss Point Police Department, and was acting under color of state law and in the course and scope of his employment with Defendant City and the Moss Point Police Department.

21. As referenced in the foregoing paragraphs of this Complaint, when he was shot dead, Mr. Sims did not pose any reasonable or credible threat of death or serious bodily injury to any person, nor did he do anything to justify the force used against him, and the same was deadly, excessive, unnecessary, and unlawful. Both prior to and during the time in which he was fatally shot, Decedent Sims was actively running away from Defendant Shipman in a full sprint, and posed no immediate threat of death or serious bodily injury to any person, made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that he had the will to inflict substantially bodily harm against Defendant Shipman, or any other person. Similarly, both prior to and during the shooting incident, Decedent Sims made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that he was in the process of inflicting, or attempting to inflict, substantially bodily harm against Defendant

Shipman or any other person. Following the shooting, the officers present denied medical care to Mr. Sims in a manner that demonstrated deliberate indifference to his constitutional rights.

22. Decedent Toussaint Diamon Sims had the right to be free from unreasonable governmental seizures of their persons, a right which was secured to him by the provisions of the Fourth Amendment to the United States Constitution, and by 42 U.S.C. § 1983. All of these interests were implicated by the wrongful conduct of Defendant Shipman, which actually and proximately caused the death of Decedent Sims and actually and proximately caused severe pain and suffering to Decedent Sims prior to his death.

23. Upon information and belief, plaintiffs further allege that in unreasonably seizing the person of Decedent Sims, as described in the foregoing paragraphs of this Complaint, the Defendant Officer acted willfully, maliciously, knowingly, and with reckless disregard and callous indifference to the known consequences of his acts and omissions, and purposefully with the intent to deprive Decedent Sims of his federally protected rights and privileges, and did in fact violate the aforementioned rights and privileges, thereby warranting punitive and exemplary damages against the Defendant Officer in an amount to be proven at the trial of this matter.

24. As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of the Defendant Officer, Decedent Sims was shot and killed on August 8, 2019, and suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity, apprehension, and loss of enjoyment of life prior to his death.

## II. PLAINTIFFS' SECOND CLAIM: 42 U.S.C. § 1983 - MUNICIPAL LIABILITY AGAINST DEFENDANT CITY BASED ON A POLICY OF INADEQUATELY TRAINING ITS OFFICERS

25.     Plaintiffs incorporate by reference all the foregoing allegations.

26.     Miss. Code Ann. 21-21-1 states that the chief of police shall be the chief law enforcement officer of the municipality for which he is employed and shall have control and supervision of all police officers employed by said municipality. At all times relevant to this action, Chief Brandon Ashley was a policymaker who had policymaking authority in the Moss Point Police Department, and pursuant to this authority, deliberately and consciously adopted a course of action, to the exclusion of other courses of action, with respect to the training of his officers under his supervision, including Defendant Shipman.

27.     As described in the foregoing paragraphs of this Complaint, the fatal shooting of Decedent Sims began after a foot pursuit of approximately ten seconds or less. Upon information and belief, Defendant Shipman has, and will continue to, justify his decision to fire multiple rounds at Mr. Sims by stating that he was in fear of his life when he fired each round. Upon information and belief, as alleged by Defendant Shipman, Mr. Sims was in possession of a firearm and threatening him with said firearm during the time in which he fired, and continued to fire, at Mr. Sims. As described in the foregoing paragraphs of this Complaint, Defendant Shipman's stated justification for killing Mr. Sims was false and objectively unreasonable because at the time the shots were fired, Mr. Sims was in the process of running away from, and increasing his distance from, Officer Shipman in a full sprint, and in reality made no aggressive movements, no furtive gestures and no physical

movements which would suggest to a reasonable officer that he was in the process of inflicting, or attempting to inflict, substantially bodily harm against Defendant Shipman.

*Inadequate Training Re: Tactical Considerations Involved in Officers' Foot Pursuits*

28.     Upon information and belief, prior to August 8, 2019, Defendant Shipman received no training, or inadequate training, concerning the tactical advantages available to police officers engaging in foot pursuits of suspects, including the nationally recognized tactical training which instructs and directs officers engaging in foot pursuits to employ area containment, surveillance, and the utilization of additional departmental resources, including other officers, prior to unilaterally engaging in a foot pursuit of a fleeing suspect, such as Decedent Sims. In this instance the result of Defendant Shipman's nonexistent or inadequate tactical training concerning foot pursuits dramatically increased the likelihood of an unnecessary and unwarranted use of lethal force against Mr. Sims, as Defendant Shipman's decision to run after Mr. Sims without any consideration of area containment, surveillance, and/or the utilization of additional departmental resources, including other officers, effectively eliminated the availability of the tactical advantages of (1) time and (2) distance, which would have been available to Defendant Shipman if he had considered using additional departmental resources to apprehend Mr. Sims during the approximately ten seconds or less that elapsed from the time in which he exited his vehicle until he began firing the first of several rounds which killed Mr. Sims. The end result of Defendant Shipman's failure to even attempt to utilize additional departmental resources after exiting his vehicle was the unnecessary firing of multiple rounds rounds of lethal force at the person of Mr. Sims, which, according to Defendant Shipman, was in response to his alleged perception of

deadly threat that in reality did not exist, and would not have been apparent to a reasonable officer.

29. Upon information and belief, prior to August 8, 2019, Chief Ashley was aware of, and deliberately indifferent to, the known and obvious consequences of the MPPD's failure to implement training protocols which would provide training and instruction to MPPD officers concerning the nationally recognized tactical considerations attendant to foot pursuits of fleeing suspects which train, instruct, and emphasize the importance of establishing area containment, surveillance, and the utilization of additional departmental resources, including other officers, as a preferred tactical alternative to that of an officer, acting alone, attempting to overtake and confront a fleeing suspect. Upon information and belief, prior to August 8, 2019, based on his personal knowledge of other instances involving the unreasonable use of force arising out of officers' failures to adequately utilize departmental resources during foot pursuits, Chief Ashley was aware that an unwarranted and unjustified use of deadly force against a fleeing suspect, such as Decedent Sims, was a highly predicable consequence of his failure to implement training protocols emphasizing MPPD officers' utilization of departmental resources prior to engaging in foot pursuits of suspects, yet nevertheless deliberately and consciously elected not to adopt and implement such training procedures.

## III. DAMAGES

30. As a direct and proximate result of the wrongful and intentional acts of and omissions of Defendant Shipman, Decedent Sims was shot and killed on August 8, 2019, and suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety,

grief, shock, humiliation, indignity, apprehension, and loss of enjoyment of life prior to his death, all to his damage in a sum to be determined at trial.

31. As a direct and proximate result of the above-described conduct of the Defendants, all Plaintiffs have sustained substantial economic and non-economic damages resulting from the loss of the love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, guidance, services, earnings, and financial support of Decedent Sims in an amount according to proof at trial.

32. As a further proximate result of the above-described conduct of the Defendants, and each of them, and the ensuing death of Decedent Sims, all Plaintiffs have incurred funeral and burial expenses in an amount according to proof at trial.

## IV. ATTORNEYS' FEES

33. Plaintiffs are entitled to and hereby demand reasonable costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

## V. JURY DEMAND

34. Plaintiffs hereby demand that a jury be impaneled for the trial of this matter.

### PRAYER

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. For funeral and burial related expenses according to proof at trial;
2. For general and special damages in an amount according to proof at trial;
3. For costs of suit incurred herein;
4. For attorneys' fees incurred herein, as provided by law;

5. For punitive damages against the individual Defendants in their individual capacities in an amount according to proof at trial; and

6. For such other and further relief as the Court deems just and proper.

DATED: July 30, 2020

Respectfully submitted,

**THE COCHRAN FIRM**

By: /s/ Gerald Talmadge Braddock
Attorney for Plaintiffs
The Cochran Firm Biloxi Gulfport LLC
770 Water Street
Biloxi, MS 39530
Telephone (228) 234-1926
Email: tbraddock@cochranfirm.com
Mississippi State Bar Number #10071

Of Counsel (Pending Pro Hac Vice Admission)
Attorney Brian T. Dunn
The Cochran Firm California
4929 Wilshire Blvd., Suite 1010
Los Angeles, California 90010
Telephone: 323-435-8205
Fax: 323-282-5280
Email: bdunn@cochranfirm.com